At this time, we'll hear Triaxx Prime CDO versus U.S. Bank National Association. Mr. Moon, good morning. Good morning, Your Honors. My name is John Moon. I represent the Triaxx CDOs. They are the issuers in this matter. This appeal arises out of claims that the Triaxx CDOs brought against U.S. Bank and the Bank of New York Mellon with respect to RMBS. The operative agreements here are indentures of trust and collateral management agreements. Can I interrupt and just ask, why is Triaxx suing? Why are they the plaintiff in this case? Why isn't it the manager or the certificate holders? In this case, the funds, Triaxx itself, has sustained the losses. The collateral manager has authority under the indentures and the collateral management agreement to direct Triaxx to sue Bank of New York Mellon and U.S. Bank. Is that in the record, the direction to sue? Yes. And why aren't the certificate holders, who are the real losers, aren't they? In fact, they are the real losers, and we have Why aren't they suing? We have evidence in the record that it would be impractical for the note holders to sue. It would take virtually 100% of the note holders to sue. And also, U.S. Bank, as trustee, need not sue on behalf of the note holders if it itself takes liability on by doing so. But if Triaxx was prevailed in this lawsuit, what would they get? If Triaxx prevailed in this lawsuit, it's seeking approximately $280 million in damages, which would then pass through to the note holders. So they are acting in the place of the note holders. Yes, Your Honor. And there are other people also acting for the note holders. There are other people contractually allowed to act for the note holders. Yes, Your Honor, there are. So if there was a difference of opinion about whether to sue or how much to sue for or how much to settle for, we would have a mess, right? But we don't, Your Honor. I understand that, but I'm just saying. Not on this record. I understand, but that's hypothetical. Hypothetically, that is correct, Your Honor. Yes, Your Honor. Your Honor, you're not injured directly. Your only injury comes in, the only injury that occurs is to the note holders, but so somehow you have a representative capacity of the note holders? Well, you know, we plead, Your Honor, that the actual note holders, you know, Triaxx owns the notes. It then passes on interest in principle to their note holders. Well, sure, and so they're the ones that are injured, right? Ultimately, yes. Does Triaxx guarantee payment on the notes? Triaxx does not. So how could Triaxx be held liable for anything? Presume that the trustee does not go and foreclose on mortgages that are in default, as many trustees have not done, particularly in rural poor areas like upstate New York, where Judge Pooler and I live. So there are many homes that are abandoned now. And presume then, therefore, that the note holders aren't getting their payments as they were guaranteed to get. Does Triaxx get sued for that? It may, Your Honor. What's the basis of its liability? It could be a breach of fiduciary duty. It could be failure to take action. It could be negligence. But you ceded the ability to take action to the trustee, didn't you, to the bank? We did not, Your Honor. We did not. It was for the purposes of securitization, wasn't it? No, for the purposes of security, for the purposes of the RMBS sending principle and interest to Triaxx. It was a very limited transfer of power. And we can go into that. And one of the things that's going through these documents is that the collateral manager must act in the best interest of the note holders. I mean, that's in the integrated agreements, and that is why Triaxx has brought this action. It is directed to ‑‑ that's why the collateral manager has directed Triaxx to bring this action for the best interest of the note holders. Okay. Okay. So let me go through some of these integrated provisions that show that full authority was not transferred to the trustee. For example, in Section 7.5 of the indenture, entitled Protection of the Collateral, requires the issuer to, among other things, one, quote, enforce any of the pledged securities or other instruments or property included in the collateral, and two, quote, preserve and defend title to the collateral and the rights therein of the trustee and the holders of the secured notes. Section 2D of the Collateral Management Agreement authorizes the collateral manager to act in the issuer's name and to take action on behalf of the issuer and to direct the trustee to take actions with respect to the collateral, including, quote, exercising any other rights or remedies with respect to the collateral debt security, or taking, quote, any other action consistent with the terms of the indenture which the collateral manager reasonably believes to be in the best interest of the note holders. Read together, these provisions establish that there was no unequivocal and complete assignment, and we know under New York State law, a court is required to effectuate and harmonize all the provisions of integrated agreements, and the arguments of the defense do harm to that. They say it is an exclusive and complete transfer which nullifies the provisions that I just read to you in these integrated agreements. There is support at the appellate division in Hildeen and at Texas with very similar types of language that found standing. And again, they are not on point factually, but the terms of the agreements are very similar. For example, in the Texas, there is a similar granting provision, and there is language in Section 10.02 of the Pooling and Servicing Agreement that is functionally indistinguishable from Section 2D of the Collateral Management Agreements that I read to you just now. Also in Hildeen, there was a similar granting clause and language functionally indistinguishable from Section 7.5 of the Indentures that I just read to you. And what we see in assessing the district court's opinion is that the district court made a decision based on only the granting clause first and then did not fully consider these other provisions that should be given effect. Thank you. Good morning, Your Honors. Michael Marcucci on behalf of U.S. Bank, and I will be arguing on behalf of both defendants here today. The controlling decision in this case is this Court's decision in NCUA v. U.S. Bank National Association, which was decided in August after the briefing in this case concluded. This Court construed a granting clause in NCUA that was functionally indistinguishable from the granting clause here, and there concluded that the issuer in NCUA, which was called an NGN trust and analogous to the plaintiffs here, had assigned all right, title, and interest in the RMBS certificates to the indenture trustee of the NGN trusts. As a result of that assignment, the issuer plaintiffs in NCUA, like the issuer plaintiffs here, no longer had standing to sue as though they were certificate holders of the RMBS trusts. The indentures in NCUA contain almost all of the provisions that counsel for TRIACS has highlighted. What does this mean in terms of who could sue the trustee? So the standing to sue the trustees of the RMBS trust would be held by the CDO indenture trustee of the TRIACS CDOs, and so it would be in the hands of U.S. Bank as CDO indenture trustee. U.S. Bank would have to sue itself? As presently constituted, yes, but not as a matter of contractual interpretation. So who could sue U.S. Bank? They're alleged that they breached certain duties to protect the quality of the collateral. Who could sue U.S. Bank for that alleged breach? So under these CDOs, it would have to be likely a different party appointed in place of U.S. Bank as CDO indenture trustee, and the CDO indentures speak to this possibility, and what happened in the NCUA case is NCUA made an argument very similar to what TRIACS makes here. They said, well, if you don't let NCUA sue, then nobody will sue the trustees and they'll get a windfall, but in fact that was wrong both as a matter of contractual interpretation and as a matter of fact, and the way NCUA resolved it was by appointing a separate trustee under 6.13 of the NCUA indenture. There's a similar, excuse me, 5.13 in NCUA. It's 6.13 under the CDO indentures, and so. Who would appoint? It would probably, the request should be initiated from the note holders of the CDO. And they're the ones who are getting, experiencing the losses, right? That's right. The note holders of the CDO both experienced the losses on the RMBS. They would also have to pay the cost of this litigation, and so the way this litigation would be funded if the TRIACS issuers proceeded is they would take money out of the cash flow that would otherwise go to the note holders to fund the litigation. And so if the note holders of the CDO wanted these lawsuits to happen against the U.S. Bank, they would direct the U.S. Bank under 5.13 of the CDO indenture to take some step to facilitate that. So that lawsuit would be funded by the note holders, whereas under the arrangements initially conceived, it would be paid by U.S. Bank. Well, U.S. Bank would also be indemnified by the note holders. So if U.S. Bank, for example, U.S. Bank does not have a conflict ensuing Bank of New York. So the same defense costs would be drawn out of the same funds, only by a different route. Correct. Whoever is bringing the suit on behalf of the note holders would presumably be entitled to indemnity under the CDO indenture. And so the cost of the litigation then would be borne by the note holders. So you don't deny that there might be a lawsuit lurking there somewhere. You just think TRIACS is not the party that could bring it. That's correct, Judge Fuller. There could well be a lawsuit, and there have been a number of lawsuits against U.S. Bank and other RMBS trustees in this context, of which the note holders presumably are aware. And so if they decided they wanted these claims to be brought, just as in NCUA, they went and found a separate trustee to be substituted in to bring the claims, the note holders here could offer some direction. I mean, the only thing we've been confronted with so far, in terms of a direction, is a direction from the collateral manager to assign the claims back to the collateral manager, which we're not required to do under the indenture. And even according to— The collateral manager acquired no greater rights than the originator, right? That is correct. So the collateral manager is the agent of the issuer or plaintiff, and so the collateral manager cannot have more rights than the issuer or plaintiffs. What do you take to their assertion that they were certificate holders? I think that's contradicted by the plain meaning of the indentures, and the indentures are clearly in front of the district court and may be considered on a motion to dismiss. There's no dispute about their context. And under the plain and unambiguous language of the granting clause in the indentures, all of the rights in the RMBS certificates go from the issuer to U.S. Bank. Originally it was LaSalle Bank, and now it's U.S. Bank as the CDO indenture trustee who has all of the rights. And none of the provisions that TRIAC cites, whether it's 7.5 or 7.8, which are also present in the ANSUA indenture, none of them cut back on the granting clause. And so we're not reading any of these provisions out of the contract. We're not saying the issuer can't bring a proper lawsuit in the right circumstance. We're not saying the collateral manager can't fulfill its duties. It's just as to these lawsuits, which are premised both as to the contract and the tort claims, on the notion that the issuers are RMBS certificate holders. So they sue as on the contract claims alleging they're certificate holders, and thus third-party beneficiaries of the contracts governing the RMBS trusts. And then as to the tort claims, all of the torts they allege were visited upon either the RMBS trusts or the RMBS certificate holders, and the issuers are neither. Are you also a defendant in the 11th Circuit case that's pending? We are not. So the- TRIAC is a plaintiff there. TRIAC is a plaintiff there, and that's another example of a situation where there's no particular conflict for U.S. Bank. And so no reason to read the granting clause differently here, because these involve claims against U.S. Bank. The defendant in the 11th Circuit case is Ockwin, which is a servicer of some RMBS trusts. And so there is a conflict in this situation, and the answer is not to do what TRIAC suggests, which is to reinterpret the granting clause in a way that's different than this Court interpreted the similar granting clause in NCUA. The answer is to follow the terms of the indenture. And so this case has been going on for two years, to two rounds of motion to dismiss. Counsel for TRIACs had knowledge to the district court that there had been no communications of any kind from any note holders. And so under the indenture, it's the note holders who have ultimately kind of the whip hand in directing U.S. Bank to proceed here. And that covers, in addition to covering both the contract claims for which they lack standing, it covers the tort claims because the district court correctly found that the RMBS trustees, Bank of New York and U.S. Bank, did not owe any duties in tort to the issuers because they were not a certificate holder. How many note holders are there? Do you know? We don't know. We don't know. Thousands? Unlikely. Hundreds? Unlikely as well, but we don't know. I mean, they're generally held in nominee names at the depository trust company. Who would know? Does TRIACs know? I will ask them in a moment. I can say we don't know. We don't know who they are, and they may change as they may be in and out. And so a plain application of the- Presumably there's a market for these things, even notwithstanding the troubled nature of it. That's right. So the CDO notes are still paying. I mean, they're probably not paying as much as people anticipated at the outset, but there's still a market and there's still value to them. And so we would submit for the defendants that application of the NCOA decision to this case requires the district court's decision to be affirmed. And so unless there are further questions, thank you. Thank you. Thank you. Mr. Moon. How many note holders are there? TRIACs does not know, Your Honor. Who would know? Probably the registrar who keeps track of the shareholders and sends out shareholder notices. Are they hundreds or thousands or tens? I presume it would be hundreds. Oh. I presume. Institutions. And this is not a situation where somebody has made some play to buy up all of them? No, Your Honor. In fact, I would just like to touch upon three brief points. First, the NCOA decision is completely distinguishable. The granting clause in NCOA granted away all present and future claims, point one. Point two, the plaintiff in NCOA was not the collateral manager. It was an entity, a liquidating agent that was three transfers away from the original transaction. Point two. The grant in this case is not present and future? No. No, not at all. It's all right, title, and interest. Okay. And it's immediately limited after that. If you don't have any right, title, and interest, then what are you going to do in the future? You're not going to have anything to act on. Because the next sentence of the granting clause says, for the purposes of security, for the purposes of getting interest in principle from the RMBS. It's a very limited grant, and we detail that in our papers. Point two. Triax is a certificate holder. It pleaded that several times, and it indeed gets the benefit of that good faith pleading. Third, a question was asked about could the note holder sue? And I'll direct the court's attention to A909 in the record, which is an affidavit of the general counsel of Triax that says, to do what my friend here suggests takes 100% of the note holders. And also, as our friend admitted, these note holders would have to indemnify U.S. Bank and Boney Mellon, pay for these very expensive counsel, and I live upstate as you live upstate. People upstate don't have money to pay these fancy New York City attorneys. And with that, I will close. There are lawyers outside New York City. There are. I don't know if there are. And they're in the Second Circuit, Your Honor. Thank you. Thank you. Thank you both. We will reserve the session.